## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| S&S Activewear LLC and Broder Bros., LLC. d/b/a alphabroder,<br><br>           Plaintiffs,<br><br>  vs.<br><br>DGI Apparel, Inc.,<br><br>           Defendant. | Civil Action No.<br><br>**COMPLAINT** |

Plaintiffs S&S Activewear LLC ("**S&S**") and Broder Bros., LLC d/b/a alphabroder ("**Alphabroder**") allege the following causes of action against Defendant DGI Apparel, Inc. ("**DGI**").

### INTRODUCTION

1. Defendant DGI's entire business model is reliant on unlawfully accessing the websites and computer systems of blank apparel distributors to purloin confidential and proprietary information. DGI regularly induces customers of S&S and Alphabroder, two of the largest distributors of blank apparel and accessories in North America, to breach their agreements and provide DGI with their login credentials. DGI then uses these pilfered credentials to repeatedly and unlawfully access S&S and Alphabroder's websites and computer systems and to gather and misappropriate confidential and proprietary data and trade secrets. Upon information and belief, DGI then provides the trade secrets to S&S and Alphabroder's competitors, enabling them to undercut their pricing. Worse, DGI has helped itself to S&S and Alphabroder's established trademarks to make it seem as though S&S and Alphabroder endorse this thievery. This lawsuit seeks to stop Defendant's brazen and unlawful scheme to exploit S&S and Alphabroder's

confidential and proprietary information, as well as their hard-earned reputation, customer relationships, and proprietary information for DGI's own benefit.

2. Plaintiffs S&S and Alphabroder supply imprintable apparel and accessories to thousands of registered businesses, who customize them with their own creative designs for their customers. Their websites offer registered customers exclusive access to their products, pricing, inventory, and ordering services. Both S&S and Alphabroder have invested substantial resources in developing and maintaining their websites, their trademarks, and their confidential information, which give them a competitive edge in the market.

3. S&S and Alphabroder own and operate the websites www.ssactivewear.com and www.alphabroder.com, respectively, which provide their registered customers with access to their products, pricing, inventory, and ordering services.

4. Defendant operates a website accessible at https://www.dgiapparel.com/. Defendant induces S&S and Alphabroder customers to provide or otherwise make available their login credentials to Defendant and/or to illicitly use these login credentials to access S&S and Alphabroder's websites in violation of S&S and Alphabroder's respective terms of use. Defendant then takes advantage of this unauthorized access to extract, scrape, and collect confidential, proprietary, and trade secret information from S&S and Alphabroder's systems, including customer-specific bespoke prices and real-time inventory information.

5. On information and belief, Defendant then offers and makes available S&S and Alphabroder's confidential and proprietary information to their competitors, enabling these competitors to undercut S&S and Alphabroder's prices and divert sales away from them. Defendant also infringes upon S&S's trademarks and Alphabroder's trademarks by displaying and using them without authorization in a manner that is likely to confuse consumers into wrongly

2

believing that S&S and Alphabroder sponsor or endorse DGI's services when they categorically do not.

6.      S&S and Alphabroder have repeatedly demanded that Defendant comply with their terms of use, respect their intellectual property rights, and cease its unauthorized access to their computer systems and servers. Defendant has made some minor edits to its website, but has otherwise ignored S&S and Alphabroder's requests and continued its infringing and harmful activities.

## I.      PARTIES

7.      Plaintiff S&S Activewear LLC is a Delaware limited liability company with its principal place of business in Bolingbrook, Illinois.

8.      Plaintiff Broder Bros., LLC d/b/a alphabroder is a Delaware limited liability company with its principal place of business in Trevose, Pennsylvania.

9.      Defendant DGI Apparel, Inc. is a Delaware corporation with its principal place of business in Bronx, New York. DGI Apparel, Inc. may be served by delivering a copy of the summons and complaint to its registered agent for service: Legalinc Corporate Services Inc., 131 Continental Drive, Suite 305, Newark, Delaware 19713.

## II.      JURISDICTION AND VENUE

10.      This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 because this action arises under the Lanham Act (15 U.S.C. § 1125(a)) and the Computer Fraud and Abuse Act (18 U.S.C. § 1030).

11.      This Court has supplemental jurisdiction over New York statutory and common-law claims under 28 U.S.C. § 1367 because these claims arise from the same common nucleus of operative facts as S&S and Alphabroder's federal claims.

12.     This Court has personal jurisdiction over Defendant because its principal place of business is in Bronx, New York.

13.     Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims raised in this lawsuit occurred in this District.

### III.    FACTS

**A.     Plaintiff S&S Activewear LLC**

14.     Founded in 1988, S&S is a leading, technology-enabled apparel and accessory distributor in the United States and Canada. S&S services a broad range of customers through its nationwide network, including retail brands, e-commerce companies, garment decorators, promotional products distributors, entertainment merchandisers, lifestyle brands and web-based platforms for apparel customization. S&S offers a large variety of brands, including basic garments to fashion-forward styles, and uniquely offers one-day shipping to 41 states.

15.     S&S owns and operates the website www.ssactivewear.com ("**S&S Site**"). The S&S Site has both public and password-protected pages.

16.     S&S currently has more than 100,000 active customers on its website annually, averaging 50,000 users completing an online purchase each month.

17.     S&S sells exclusively to registered businesses through its website, www.ssactivewear.com. It does not sell to end-users or the general public.

18.     S&S invests millions of dollars in creating and maintaining the S&S Site. It employs professional web developers, designers, and programmers to ensure the website is user-friendly, functional, and secure.

19. S&S spends considerable sums taking its own product pictures, writing its own product descriptions, and creating its own marketing materials. It strives to showcase its products in an accurate and appealing manner that reflects the brands and its values.

20. The S&S Site is a valuable asset that gives S&S a competitive edge in the wholesale apparel industry. It helps attract and retain customers who rely on the website for convenient, efficient, and personalized online shopping. It also generates substantial revenue and goodwill for S&S.

21. The public portions of the S&S Site allows customers to view S&S products and the starting prices for their products.

22. To access additional portions of the S&S Site and to make orders, S&S requires each customer to register with a unique username and password.

23. In order to create an account with S&S, customers must provide detailed business information and state issued Resale Certificate, if applicable. If a prospective customer meets certain eligibility criteria, S&S will onboard the customer.

24. S&S provides its registered customers with bespoke pricing. The specific pricing that is available to a particular registered customer depends on various factors including, but not limited to, the customer's previous ordering history, location, order volume, and loyalty.

25. Only registered customers may view custom pricing, place orders, view detailed product information, view their order history, and access S&S's real-time inventory information.

26. Customer bespoke pricing information, real-time inventory information, and customers' order history is considered S&S's proprietary information. Such information is not available to the public, and S&S takes considerable measures to maintain its secrecy such as providing a gated experience to only those customers who have approved accounts, not advertising

any bespoke pricing in promotional materials, limiting the visibility of customer specific prices to employees assigned to the customer's account, and employing security measures that prevent employees from downloading pricing reports and customer pricing information. If S&S competitors are able to compile such data from multiple S&S customers, they could reverse engineer its pricing strategy and its real-time inventory allocations, both of which were carefully developed over many years and provide S&S with a competitive advantage.

**B.      Plaintiff Alphabroder**

27.      Founded in 1919, Alphabroder is a leading supplier of wholesale apparel, promotional products, and imprintable goods. Alphabroder carries more than 6,500 styles of classic and trending products like wholesale t-shirts, fleece, drinkware, bags, journals and more. Alphabroder's customers include promotional product distributors, athletic team dealers, screen printers, embroiderers, online retailers, and thousands of other businesses.

28.      Alphabroder owns and operates the website www.alphabroder.com ("**AB Site**"). The AB Site has both public and password-protected pages.

29.      Alphabroder currently has more than 81,000 active customers on its website annually, averaging 24,000 users completing an online purchase each month.

30.      Alphabroder sells exclusively to registered businesses through its website, www.alphabroder.com. It does not sell to end-users or the general public.

31.      Alphabroder was acquired by S&S in 2024, commencing a thoughtful, multi-year integration process designed to ensure the combined company continues to deliver exceptional customer service, while leveraging the strengths of both brand offerings.

32.     Alphabroder invests millions of dollars in creating and maintaining the AB Site. It employs professional web developers, designers, and programmers to ensure that the website is user-friendly, functional, and secure.

33.     Alphabroder also spends considerable sums taking its own product pictures, writing its own product descriptions, and creating its own marketing materials. It strives to showcase its products in an accurate and appealing manner that reflects the brands and its values.

34.     The AB Site is a valuable asset that gives Alphabroder a competitive edge in the wholesale apparel industry. It helps to attract and retain customers who rely on the websites for convenient, efficient, and personalized online shopping. The AB Site also generates substantial revenue and goodwill for Alphabroder.

35.     The public portions of the AB Site allows customers to view Alphabroder brands, products, and the starting prices for its products.

36.     To access additional portions of the AB Sites, Alphabroder requires each customer to register with a unique username and password.

37.     In order to create an account with Alphabroder, customers must provide detailed business information and state issued Resale Certificate, if applicable. If a prospective customer meets certain eligibility criteria, Alphabroder will onboard the customer.

38.     Alphabroder provides its registered customers with bespoke pricing. The specific pricing that is available to a particular registered customer depends on various factors including, but not limited to, the customer's previous ordering history, location, order volume, and loyalty.

39.     Only registered customers may view the custom pricing, place orders, view detailed product information, view their order history, and access Alphabroder's real-time inventory information.

7

40.    Customer bespoke pricing information, real-time inventory information, and customers' order history is considered Alphabroder's proprietary information. Such information is not available to the public, and Alphabroder takes considerable measures to maintain its secrecy such as providing a gated experience to only those customers who have approved accounts, not advertising any bespoke pricing in promotional materials, limiting the visibility of customer specific prices to employees assigned to the customer's account, and employing security measures that prevent employees from downloading pricing reports and customer pricing information. If Alphabroder competitors are able to compile such data from multiple Alphabroder customers, they could reverse engineer its pricing strategy and its real-time inventory allocations, both of which were carefully developed over many years and provide Alphabroder with a competitive advantage.

**C.    Sensitive Customer Information**

41.    For the convenience of their customers, S&S and Alphabroder allow registered customers to save credit card and other sensitive information onto their accounts so that they do not have to provide it every time they place an order.

42.    S&S and Alphabroder also provide credit lines, up to millions of dollars, to registered customers who have applied and been approved by S&S and Alphabroder. Approved customers may access such credit lines to place orders by logging into their account.

43.    S&S and Alphabroder take steps to protect the security of their customers' information, such as encrypting and storing it in secure servers. Further, S&S and Alphabroder both have robust cybersecurity programs and dedicated staff that monitor and maintain the security of customer data.

44.     The security of customer information is vital to the integrity of S&S and Alphabroder's proprietary computer networks as well as the level of confidence customers have in using the S&S Site and the AB Site.

**D.      Terms of Use**

**1.       S&S's Terms of Use**

45.     Visitors to both the public and password-protected portions of the S&S Site are subject to S&S's Terms of Use, available at https://www.ssactivewear.com/about/termsofuse ("**S&S TOU**").

46.     The S&S TOU limit the purposes for which users may access, use, or download the S&S Site's contents. Among the reasonable limitations that S&S places on its users, the S&S TOU prohibits customers from sharing their login and/or password information with any third party, using or exploiting the S&S Site for any commercial services, offering any portion of the S&S Site to a third party, and manipulating identifiers to disguise the origin of any data transmitted to or through the S&S Site. Specifically, the S&S TOU provides:

    a.  *Section 2:* "Access to certain portions of this Site may require login and password information provided only to users and/or businesses who have registered (the "Registered Users"). Registered Users are responsible for maintaining the security of their login credentials. The login and password are provided for the use of the Registered User only are not transferable and may not be shared with other users or businesses. If you have received a login and password that belong to another person, you are not authorized to use that login account …"

    b.  *Section 6:* "…If you choose to register as a Registered User, you agree that you will be responsible for maintaining your password as confidential, you will not share your login credentials with another user or business, and should you choose to share your login credentials with another user or business in violation of this Agreement, you will be responsible and for any activity that occurs as a result…."

    c.  *Section 8:* "You are responsible for all of your User Content. Likewise, you are responsible for respecting S&S's and third parties' rights with respect to Content that appears on the Site and agree not to download, email or otherwise transmit such Content in violation of S&S's and third parties' rights. You agree to use the Site solely to accommodate your own personal or business needs. Except as

explicitly permitted and contemplated by the Services, you may not use or exploit any portion of the Site, Content or Services to provide any commercial services, 'spam' or other unsolicited communications to third parties or offer any portion of the Site to any third party. You shall not use the Site or Services to: . . . Impersonate another person or entity, including without limitation, a representative of S&S or its officers, directors, employees or agents, falsely represent or misrepresent your affiliation with another person or entity, or forge headers or otherwise manipulate identifiers that would disguise the origin of any User Content transmitted to or through the Site[.]"

47.     On information and belief, Defendant, or individuals acting in concert with Defendant, visited the S&S Site and registered for at least one S&S account while developing and testing the DGI Site. By accessing the public and password-protected portions of the S&S Site, Defendant agreed to abide by the S&S TOU.

## 2.     Alphabroder's Terms of Use

48.     Visitors to the public and password-protected portions of the AB Site are subject to Alphabroder's Terms of Use, available at https://www.alphabroder.com/terms-conditions ("**AB TOU**").

49.     The AB TOU limit the purposes for which users may access, use, or download the AB Site's contents. Among the reasonable limitations that Alphabroder places on its users, the AB TOU prohibits customers from sharing their login and/or password information with any third party, the unauthorized use, modification, reproduction, distribution or publication of the AB Site's contents, and accessing or using the AB Site for the purpose of competing with Alphabroder. Specifically, the AB TOU provides:

    a.  *Section 1:* "Certain parts or features of the Site may require registration/creation of an account or may otherwise ask you to provide information to participate in certain features or to access certain content... You agree that you will not provide any false personal information to the Site, or create an account for anyone other than yourself or your company without their permission. …. If you register with the Site, you are responsible for maintaining the confidentiality of your password, if any, and for restricting access to your computer so that others may not access the password protected portion of the Site. …"

b.  *Section 2*: "Provided you comply with the terms of this Agreement, you may access, use or download the Site and the materials provided on it ("Content") for your business only as specifically permitted on the Site, or for your personal, noncommercial purposes. alphabroder grants you a limited, revocable, nonexclusive right to use the online marketing tools and services provided through or on the Site, including but not limited to Custom Catalog, Design Studio, Digital Lounge, Marketing Hub, Sell Sheet Wizard, Campaign Manager (collectively, "Marketing Tools") as specifically permitted on the Site, for the purposes expressed on the Site. No other use of Content or Marketing Tools is allowed. For purposes of this Agreement, Marketing Tools are included in the definition of Content. These limited rights are granted to you as long as you:

    i.  Agree that, once you receive an alphabroder 'customer number' you and/or authorized employees and agents will use your customer number to access the Site for your internal business purposes, and you will not allow anyone other than your authorized employees or agents to use your customer number to access the Site for these purposes.

    ii.  Make only lawful use of the Site and the Content.

    iii.  Violate no rights or licenses of any third party.

    iv.  Keep unchanged all copyright and other notices.

    v.  Protect the Content from unauthorized use, modification, reproduction, distribution or publication.

    vi.  Do not portray alphabroder, its affiliates or licensors, or their products or services, in a false, misleading, derogatory, or offensive way, as determined by alphabroder in its sole discretion.

    vii.  Abide by all applicable local, state, federal, national and international laws, rules and regulations. . . .

    viii.  Do not use a false e-mail address, impersonate any person or entity, or otherwise mislead anyone as to the origin of your services or of any Content.

    ix.  Do not directly or indirectly access, use or download Content for the purpose of competing with alphabroder (e.g., scraping product data or user information)."

50.    On information and belief, Defendant or individuals acting in concert with Defendant, visited the AB Site and registered for at least one Alphabroder account while developing and testing the DGI Site. By accessing the public and password-protected portions of the AB Site, Defendant agreed to abide by the AB TOU.

11

**E.    Trademarks**

**1.    S&S's Trademarks**

51.    S&S has for years used the trademarks "S&S" and "S&S ACTIVEWEAR," alone and in conjunction with distinctive logos featuring the letters S&S in a stylized font and color scheme (collectively, the "**S&S Marks**"), which it uses to identify and distinguish its goods and services from those of others:





52.    The S&S Marks have been continuously used in commerce since 1988. S&S's use of the S&S Marks has been continuous and exclusive, and they have acquired significant secondary meaning and customer goodwill. S&S owns all common law rights to the S&S Marks.

53.    S&S has attained strong name recognition in the S&S Marks. The S&S Marks have come to be associated with S&S and identify S&S as the source of wholesale distributorship services, online ordering services and other goods and services offered in connection with the S&S Marks.

54.    S&S has invested hundreds of millions of dollars in advertising using the S&S Marks including in catalogs, tradeshows, events, digital marketing, and the S&S Site.

55.    S&S has developed substantial goodwill in the S&S Marks.

56.    The S&S Marks are among S&S's most important and valuable assets.

### 2.      Alphabroder's Trademarks

57.      Alphabroder is the owner of multiple registered trademarks, including ALPHABRODER (U.S. Reg. 4744555), AB ALPHABRODER with a distinctive logo featuring the letters "ab" and "alphabroder" (U.S. Reg. 4744556), ALPHA (U.S. Reg. 2903274) and various BRODER marks in a stylized font and color scheme (U.S. Regs. 3056846, 3003365) (collectively, the "**AB Marks**"), which it uses to identify and distinguish its goods and services, including wholesale distributorship services and online ordering services, from those of others.

58.      ALPHABRODER (U.S. Reg. 4744555) has been used in commerce since January 6, 2014 and is incontestable.

59.      AB ALPHABRODER (U.S. Reg. 4744556) has been used in commerce since January 6, 2014 and is incontestable.

60.      ALPHA (U.S. Reg. 2903274) has been used in commerce since 1932 and is incontestable.

61.      BRODER (U.S. Regs. 3056846; 3003365) has been used in commerce since January 14, 2004.

62.      Alphabroder's use of the AB Marks have been continuous and exclusive. Alphabroder owns all common law rights to the AB Marks.

63.      Alphabroder has attained strong name recognition in the AB Marks. The AB Marks have come to be associated with Alphabroder and identify Alphabroder as the source of wholesale distributorship services and online ordering services and other goods and services offered in connection with the AB Marks.

64.      Alphabroder has invested hundreds of millions of dollars in advertising using the AB Marks including in catalogs, tradeshows, events, digital marketing, and the AB Site.

13

65.    Alphabroder has developed substantial goodwill in the AB Marks.

66.    The AB Marks are among Alphabroder's most important and valuable assets.

**F.    DGI's Unauthorized and Unlawful Activities**

67.    Defendant DGI Apparel is a software company that operates a website accessible at https://www.dgiapparel.com/ ("DGI Site").

68.    On information and belief, Defendant's business model is premised on inducing customers to breach their agreements with S&S, Alphabroder, and other blank apparel distributors by providing or otherwise making available their login credentials to Defendant, which then uses these login credentials to illicitly access password-protected portions of the S&S Site and the AB Site, including S&S's and Alphabroder's proprietary pricing information, along with presumably proprietary pricing information of other blank apparel distributors.

69.    On information and belief, Defendant displays S&S and Alphabroder's real-time available products, custom pricing, order history, and inventory information.

**1.    DGI's Unauthorized and Unlawful Use of Customer Information**

70.    In order for an S&S or Alphabroder customer to see their S&S or Alphabroder information on the DGI Site, Defendant requires customers to input their S&S or Alphabroder username and password. The S&S TOU and the AB TOU expressly prohibit customers from sharing their login information with any third party. On information and belief, Defendant is aware of these prohibitions and deliberately causes customers to breach them by requiring them to provide their login information to DGI in order to use the DGI Site.

71.    On information and belief, Defendant stores S&S and Alphabroder customer login information and other customer-specific information such as order history in its own computer network.

72.     Defendant has accessed, and on information and belief has stored, highly sensitive parts of S&S and Alphabroder customers' accounts, including customers' credit card information, undermining S&S and Alphabroder's security measures and the security of customer information.

**2.     DGI's Unauthorized and Unlawful Use of S&S and Alphabroder Trade Secrets and Proprietary Information**

73.     On information and belief, in 2023, DGI began "scraping" (i.e., using an automated process to extract data) propriety information such as pricing, customers and real-time inventory from password-protected portions of the AB Site and the S&S Site after gaining access through its illicit use of registered customers' usernames and passwords.

74.     On information and belief, some suppliers, including Plaintiffs' direct competitors, pay Defendant both to be featured more prominently on the DGI Site and to get access to S&S and Alphabroder's confidential and proprietary information, such as bespoke customer pricing, real-time inventory and customer order history. The improperly-scraped information Defendant provides these suppliers is information they could not otherwise obtain, and it enables these suppliers to use S&S and Alphabroder's own proprietary information to compete against them.

**3.     DGI's Unauthorized and Unlawful Access and Use of the S&S and Alphabroder Websites**

75.     Defendant's unauthorized access to S&S and Alphabroder's computer systems has harmed Plaintiffs' computer systems and servers because increased computing resources are required to prevent the Defendant's activities, which has resulted in higher operating costs and reduced site performance.

76.     Defendant's unauthorized access to S&S and Alphabroder's computers system is exposing S&S, Alphabroder, and their customers to heightened potential security risks, fraud, and identity theft. Defendant has obtained customers' login credentials, which provide access to order history, credit card information, shipping addresses, and ability to use the credit account. S&S and

Alphabroder have no way of knowing if and how Defendant is securing such information in its servers or whether Defendant's measures are adequate.

77.    On information and belief, Defendant masks and disguises its IP address to bypass S&S and Alphabroder's security measures. Defendant's IP masking has made it extremely difficult—and in some cases, impossible—for S&S and Alphabroder to identify and block the unauthorized access by Defendant.

78.    By masking its IP address, Defendant has provided false and misleading data to S&S and Alphabroder.

79.    At no time has Defendant received permission from S&S or Alphabroder to access or to conduct any commercial activity on the S&S Site or the AB Site.

80.    At no time has Defendant received permission from S&S or Alphabroder to use customer login credentials to access Alphabroder or S&S's computer systems or the password-protected portions of the S&S Site or the AB Site.

81.    At no time has Defendant received permission from S&S or Alphabroder to represent that solicitation of S&S and Alphabroder usernames and passwords was acceptable to S&S or Alphabroder, let alone authorized or endorsed by S&S or Alphabroder.

82.    At no time has Defendant received permission from S&S or Alphabroder to scrape or display data from the S&S Site or the AB Site on the DGI Site.

83.    S&S and Alphabroder have spent significant resources investigating Defendant's access to their systems, investigating Defendant's masked and fraudulent IP addresses, investigating the technical harms caused by Defendant, and implementing additional security measures to prevent Defendant's access to their computer systems and customers' information.

84.     The additional and expensive security measures S&S and Alphabroder have implemented in order to prevent Defendant's access to their systems has also blocked legitimate traffic to the S&S Site and the AB Site. These additional measures have resulted in fewer sales and increased customer care costs associated with assisting legitimate customers who cannot access their accounts as a result of the additional security measures.

85.     On information and belief, a few of S&S's new security measures have successfully blocked a large portion of DGI's unauthorized traffic to the S&S Site.

86.     One of these additional security measures alone has cost S&S between $4,000 and $5,000 each month.

87.     As a result Defendant's unauthorized access to S&S's computer systems, S&S has suffered economic damages in excess of $5,000.

88.     As a result of Defendant's unauthorized access to Alphabroder's computer systems, Alphabroder has suffered economic damages in excess of $5,000.

### 4.     DGI's Unauthorized and Unlawful Actions Continued Even After Receiving a Cease and Desist Letter

89.     On March 21, 2025, S&S and Alphabroder sent a cease and desist letter to Defendant, notifying Defendant that its access to the S&S Site and the AB Site and to the S&S and Alphabroder computer systems and servers was unauthorized, and that Defendant was infringing their intellectual property rights, violating the S&S TOU and the AB TOU, and inducing S&S and Alphabroder's customers to violate the S&S TOU and the AB TOU.

90.     On information and belief, DGI continues to access or is attempting to access S&S and Alphabroder's computer systems and the S&S Site and the AB site even after receiving S&S and Alphabroder's March 21, 2025 cease-and-desist letter.

91.     Indeed, in direct contravention of the demand letter, DGI informed its customers that it is actively working on restoring access to S&S's systems and servers. As of March 24, 2025, Defendant posted banners on the DGI Site informing its users that it was "updating [DGI's] functionality with S&S Activewear" and would update customers "as soon as service is restored":



92.     On information and belief, Defendant found a method to avoid S&S's additional security measures sometime between March 27, 2025 and April 1, 2025.

93.     S&S was again forced to adjust its defenses and security measures to block Defendant's access.

94.     On information and belief, Defendant is actively working on bypassing S&S's security measures.

**G.    DGI Violates Plaintiffs' Intellectual Property Rights**

95.    Defendant has used the S&S Marks and the AB Marks in commerce to advertise DGI's services in a manner likely to confuse consumers as to its association, affiliation, endorsement, or sponsorship with or by Plaintiffs.

96.    The DGI Site features and/or has featured the S&S Marks and the AB Marks and displays S&S's and Alphabroder's products, customer-specific bespoke prices, customers' order history, and real-time inventory information that DGI impermissibly scraped from the password-protected portions of the S&S Site and the AB Site.

97.    The "how it works" video that was displayed on the home page of the DGI Site shows Defendant's co-founder, Ian Hinkley, at a roadshow demonstrating how the DGI Site

operates. In doing so, he prominently features the S&S Marks and the AB Marks on the DGI website, in addition to S&S and Alphabroder's inventory and pricing information:



98.     Defendant's unauthorized use of the S&S Marks and the AB Marks includes and has included, without limitation, prominently featuring the S&S Marks and the AB Marks on the DGI Site and in advertising for DGI's services, including, but not limited to, at roadshows and through social media.





99.    Defendant's social media posts feature the S&S Marks and the AB Marks in addition to pricing and inventory information:



100.    Defendant's own website suggests it is supported by the suppliers it features like S&S and Alphabroder.

101.    The DGI Site claims, "**DGI Apparel supports most of the major apparel suppliers in the United States.** You'll be able to see which supplier accounts you can add once you sign up":

102.    Defendant also claims suppliers, like S&S and Alphabroder, pay a fee to be listed on their website, stating "we charge suppliers a fee to list or advertise on our website, but we will never charge shops to connect their suppliers and purchase on DGI Apparel":

103.    This representations is false. S&S and Alphabroder have never paid a fee to be listed or advertised on the DGI Site.

104.    On information and belief, DGI recently added a statement at the bottom of its website, in small font, providing "DGI Apparel does not claim any affiliation, sponsorship, or endorsement by any of the brands, trademarks, or logos displayed. All logos and trademarks remain the property of their respective owners." However, this disclaimer is insufficient to

overcome the numerous other ways Defendant has projected a false sponsorship or endorsement by S&S and/or Alphabroder.

105.    At no time has Defendant sought or received permission or a license from S&S or Alphabroder to use the S&S Marks or the AB Marks.

## IV.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 esq.**
*Asserted by S&S and Alphabroder*

106.    S&S and Alphabroder reallege and incorporate by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

107.    S&S and Alphabroder's websites and servers are involved in interstate and foreign commerce and are protected computers under 18 U.S.C. § 1030(e)(2).

108.    Defendant knowingly and intentionally accessed S&S and Alphabroder's computers without authorization or in excess of authorization defined by the S&S TOU and the AB TOU. Further, S&S and Alphabroder made clear in their March 21, 2025 letter that Defendant is not, and has never been, authorized to access the password-protected portions of the S&S Site the AB Site.

109.    On information and belief, after gaining unauthorized access to S&S and Alphabroder's servers, Defendant obtained and used valuable information from S&S and Alphabroder's protected computers, affecting interstate commerce.

110.    Defendant's actions have caused a loss to S&S during a one-year period in excess of $5,000, including effort and resources to investigate and combat Defendant's unauthorized access to S&S's computers, investigate harms to S&S's computer systems and customer data, and implementation of additional security measures.

111.    Defendant's actions have caused a loss to Alphabroder during a one-year period in excess of $5,000, including effort and resources to investigate and combat Defendant's unauthorized access to Alphabroder's computers, investigate harms to Alphabroder's computer systems and customer data, and implementation of additional security measures.

**SECOND CLAIM FOR RELIEF**
**Tortious Interference with Contract**
*Asserted by S&S*

112.    S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

113.    S&S has valid and enforceable contracts with its registered customers, who agree to abide by the S&S TOU when they access the S&S Site.

114.    The S&S TOU allows authorized S&S customers a limited license to access their Sites for use permitted in the TOUs.

115.    The S&S TOU prohibit users from sharing their login information with other users or businesses.

116.    The S&S TOU prohibits users from downloading, using, or exploiting any portion of the S&S Site to provide any commercial services.

117.    The S&S TOU prohibits users from sharing S&S's data with any other business or user.

118.    Defendant knew or should have known of the existence and terms of the S&S TOU as they are prominently displayed on the S&S Site and, upon information and belief, Defendant's principal, Ian Hinckley, has accessed the S&S Site.

119.    Defendant intentionally and improperly caused S&S's customers to breach the S&S TOU by soliciting, obtaining, or using customer's login credentials to access the password-protected portions of the S&S Site and to scrape S&S's confidential information.

120.    Defendant's conduct was malicious, willful, and in bad faith, and was intended to harm S&S and interfere with its contractual relations with customers.

121.    Defendant's intentional interference with S&S's contractual relations with its customers was without justification.

122.    As a direct and proximate result of Defendant's tortious interference with S&S's contracts, S&S has suffered and will continue to suffer irreparable harm, including the loss of sales, customers, goodwill, competitive advantage, and substantial resources employed in combatting Defendant's unauthorized access to S&S's systems.

### THIRD CLAIM FOR RELIEF
**Tortious Interference with Contract**
*Asserted by Alphabroder*

123.    Alphabroder realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

124.    Alphabroder has valid and enforceable contracts with its registered customers, who agree to abide by the AB TOU when they access the AB Site.

125.    The AB TOU allows authorized Alphabroder customers a limited license to access the AB Site for use permitted in the AB TOU.

126.    The AB TOU prohibits users from sharing their login information with other users or businesses.

127.    The AB TOU prohibits users from using any portion of the AB Site to provide any commercial services.

26

128. The AB TOU prohibits users from scraping product data or user information.

129. The AB TOU prohibits users from sharing Alphabroder's data with any other business or user.

130. Defendant knew or should have known of the existence and terms of the AB TOU as they are prominently displayed on the AB Site and, upon information and belief, Defendant's principal, Ian Hinckley, has accessed the AB Site.

131. Defendant intentionally and improperly caused Alphabroder's customers to breach the AB TOU by soliciting, obtaining, or using customer's login credentials to access the password-protected portions of the AB Site and to scrape Alphabroder's confidential information.

132. Defendant's conduct was malicious, willful, and in bad faith, and was intended to harm Alphabroder and interfere with its contractual relations with customers.

133. Defendant's intentional interference with Alphabroder's contractual relations with its customers was without justification.

134. As a direct and proximate result of Defendant's tortious interference with Alphabroder's contracts, Alphabroder has suffered and will continue to suffer irreparable harm, including the loss of sales, customers, goodwill, competitive advantage, and substantial resources employed in combatting Defendant's unauthorized access to Alphabroder's systems.

### FOURTH CLAIM FOR RELIEF
**Common Law Misappropriation of Trade Secrets**
*Asserted by S&S*

135. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

136. S&S's customer specific pricing information is not publicly available and is not readily ascertainable by others in the industry.

137. S&S has taken considerable measures to maintain the secrecy of its customer pricing, including by requiring registered customers input a password to access to their custom pricing and requiring customers to agree to the S&S TOU, which prohibits the disclosure or unauthorized use of such information.

138. S&S's customer pricing information derives independent economic value from being kept secret. Exposing such information could enable competitors to undercut S&S's pricing and divert customers.

139. Aggregating pricing and inventory information taken from many different customers enables Defendant or S&S's competitors with whom Defendant shares such information to reverse engineer S&S's pricing strategy and inventory strategy, which provides a competitive advantage.

140. Defendant knowingly used improper means to acquire S&S's customer pricing and inventory information when it used S&S customer login credentials without authorization to access S&S's computer systems and customer accounts.

141. On information and belief, Defendant has provided S&S's competitors with its pricing information.

142. Further, Defendant has featured S&S's pricing information on the DGI Site.

143. S&S has been and will continue to be damaged as the result of Defendant's misappropriation of S&S's valuable pricing information.

## FIFTH CLAIM FOR RELIEF
### Common Law Misappropriation of Trade Secrets
*Asserted by Alphabroder*

144. Alphabroder realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

28

145.    Alphabroder's customer specific pricing information is not publicly available and is not readily ascertainable by others in the industry.

146.    Alphabroder has taken considerable measures to maintain the secrecy of its customer pricing, including by requiring registered customers input a password to access to their custom pricing and requiring customers to agree to the AB TOU, which prohibits the disclosure or unauthorized use of such information.

147.    Alphabroder's customer pricing information derives independent economic value from being kept secret. Exposing such information could enable competitors to undercut Alphabroder's pricing and divert customers.

148.    Aggregating such information taken from many different customers enables Defendant or Alphabroder's competitors with whom Defendant shares such information to reverse engineer Alphabroder's pricing strategy and inventory strategy, which provides a competitive advantage.

149.    Defendant knowingly used improper means to acquire Alphabroder's customer pricing information when it used customer login credentials without authorization to access Alphabroder's computer systems and customer accounts.

150.    On information and belief, Defendant has provided Alphabroder's competitors with its pricing information.

151.    Further, Defendant has featured Alphabroder's pricing information on the DGI Site.

152.    Alphabroder has been and will continue to be damaged as the result of Defendant's misappropriation of Alphabroder's valuable pricing information.

## SIXTH CLAIM FOR RELIEF
**Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836**
*Asserted by S&S*

153.    S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

154.    S&S sells its products and services in interstate commerce, transacting and doing business with customers throughout the United States.

155.    S&S's trade secrets encompass customer specific pricing information, which is not publicly available and is not readily ascertainable by others in the industry.

156.    S&S has taken considerable measures to maintain the secrecy of its customer pricing, including by requiring registered customers input a password to access to their custom pricing and requiring customers to agree to the S&S TOU, which prohibits the disclosure or unauthorized use of such information.

157.    S&S's customer pricing information derives independent economic value from being kept secret. Exposing such information could enable competitors to undercut S&S's pricing and divert customers.

158.    Aggregating such information taken from many different customers enables Defendant or S&S's competitors with whom Defendant shares such information to reverse engineer S&S's pricing strategy and inventory strategy, which provides a competitive advantage.

159.    Defendant knowingly used improper means to acquire S&S's customer pricing and inventory information when it used S&S customer login credentials without authorization to access S&S's computer systems and customer accounts.

160.    On information and belief, Defendant has provided S&S's competitors with its pricing information.

30

161.    Further, Defendant has featured S&S's pricing information on the DGI Site.

162.    S&S has been and will continue to be damaged as the result of Defendant's misappropriation of S&S's valuable pricing information.

**<u>SEVENTH CLAIM FOR RELIEF</u>**
**Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836**
*Asserted by Alphabroder*

163.    Alphabroder realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

164.    Alphabroder sells its products and services in interstate commerce, transacting and doing business with customers throughout the United States.

165.    Alphabroder trade secrets encompass customer specific pricing information, which is not publicly available and is not readily ascertainable by others in the industry

166.    Alphabroder has taken considerable measures to maintain the secrecy of its customer pricing, including by requiring registered customers input a password to access to their custom pricing and requiring customers to agree to the AB TOU, which prohibits the disclosure or unauthorized use of such information.

167.    Alphabroder's customer pricing information derives independent economic value from being kept secret. Exposing such information could enable competitors to undercut Alphabroder's pricing and divert customers.

168.    Aggregating such information taken from many different customers enables Defendant or Alphabroder's competitors with whom Defendant shares such information to reverse engineer Alphabroder's pricing strategy and inventory strategy, which provides a competitive advantage.

169.    Defendant knowingly used improper means to acquire Alphabroder's customer pricing information when it used customer login credentials without authorization to access Alphabroder's computer systems and customer accounts.

170.    On information and belief, Defendant has provided Alphabroder's competitors with its pricing information.

171.    Further, Defendant has featured Alphabroder's pricing information on the DGI Site.

172.    Alphabroder has been and will continue to be damaged as the result of Defendant's misappropriation of Alphabroder's valuable pricing information.

## EIGHTH CLAIM FOR RELIEF
### Unfair Competition
*Asserted by S&S*

173.    S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

174.    S&S's customer-specific pricing information was developed through S&S's efforts, money and skill.

175.    S&S has developed and maintained confidential, proprietary, and trade secret information relating to its customer-specific pricing, which it uses to provide competitive and customized services to its customers.

176.    S&S has taken considerable measures to maintain the secrecy of its customer pricing, including by requiring registered customers to input a password to access to their specific pricing and requiring customers to agree to the S&S TOU, which prohibits the disclosure or unauthorized use of such information.

177.    Defendant, without authorization, consent, or license from S&S, has misappropriated, accessed, extracted, scraped, copied, and used S&S's customer-specific pricing

information from the S&S Site, by obtaining and using the login credentials of S&S's customers without S&S's authorization and in contravention of the S&S TOU.

178. Defendant misappropriated S&S's trade secrets for its commercial advantage, using S&S's customer-specific pricing and inventory information to offer, advertise, promote, and sell its own products and services to S&S's customers and potential customers.

179. On information and belief, Defendant has provided S&S's customer-specific pricing and inventory information to S&S competitors to use to undercut S&S pricing.

180. On information and belief, Defendant acted in bad faith.

181. Defendant's conduct constitutes unfair competition under state law, and has caused and will continue to cause irreparable harm and damage to S&S.

**NINTH CLAIM FOR RELIEF**
**Unfair Competition**
*Asserted by Alphabroder*

182. Alphabroder realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

183. Alphabroder's customer-specific pricing information was developed through Alphabroder's efforts, money and skill.

184. Alphabroder has developed and maintained confidential, proprietary, and trade secret information relating to its customer-specific pricing, which it uses to provide competitive and customized services to their customers.

185. Alphabroder has taken considerable measures to maintain the secrecy of its customer pricing, including by requiring registers customers input a password to access to their specific pricing and requiring customers to register and agree to the AB TOU, which prohibits the disclosure or unauthorized use of such information.

186. Defendant, without authorization, consent, or license from Alphabroder, has misappropriated, accessed, extracted, scraped, copied, and used Alphabroder's customer-specific pricing information from the AB Site, by obtaining and using the login credentials of Alphabroder's customers.

187. Defendant misappropriated Alphabroder's trade secrets for its commercial advantage and has used Alphabroder's customer-specific pricing and inventory information to offer, advertise, promote, and sell its own products and services to Alphabroder's customers and potential customers.

188. On information and belief, Defendant has provided Alphabroder's customer-specific pricing and inventory information to Alphabroder's competitors to use to undercut Alphabroder pricing.

189. On information and belief, Defendant acted in bad faith.

190. Defendant's conduct constitutes unfair competition under state law, and has caused and will continue to cause irreparable harm and damage to Alphabroder.

**TENTH CLAIM FOR RELIEF**
**Trademark Infringement, 15 U.S.C. § 1125(a)**
*Asserted by S&S*

191. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

192. S&S owns the S&S Marks, which it uses to identify and distinguish its goods and services from those of others.

193. At all relevant times, Defendant exercised ownership or control over online advertising for its services and websites and knowingly infringed S&S's trademark rights in online advertising for its services and website.

34

194.    Defendant's use of the S&S Marks in interstate commerce is likely to cause customer confusion or to cause mistake or to deceive as to the origin of the services offered and sold by Defendant and as to their affiliation, connection, or association with and/or endorsement or approval by S&S.

195.    Defendant is using and has used more of the S&S Marks than reasonably necessary to identify S&S's products and services.

196.    Defendant has used and continues to use marks identical to the S&S Marks in violation of 15 U.S.C. § 1125(a).

197.    Defendant's use of the S&S Marks has caused and, unless enjoined by this Court, will continue to cause injury to S&S's goodwill and reputation, for which S&S has no adequate remedy at law.

## ELEVENTH CLAIM FOR RELIEF
### Trademark Infringement, 15 U.S.C. § 1114, 1125(a)
*Asserted by Alphabroder*

198.    Alphabroder realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

199.    Alphabroder is the owner of the AB Marks, which it uses to identify and distinguish its goods and services from those of others.

200.    At all relevant times, DGI exercised ownership or control over online advertising for its services and websites and knowingly infringed Alphabroder's trademark rights in online advertising for its services and website.

201.    Defendant's use of the AB Marks in interstate commerce is likely to cause customer confusion or to cause mistake or to deceive as to the origin of the services offered and sold by Defendant and as to their affiliation, connection, or association with and/or endorsement or approval by Alphabroder.

202.    Defendant is using and has used more of the AB Marks than reasonably necessary to identify Alphabroder's products and services.

203.    Defendant has used and continues to use marks identical to the AB Marks in violation of 15 U.S.C. § 1125(a).

204.    Defendant's use of the AB Marks has caused and, unless enjoined by this Court, will continue to cause injury to Alphabroder's goodwill and reputation, for which Alphabroder has no adequate remedy at law.

## TWELFTH CLAIM FOR RELIEF
### False Sponsorship
*Asserted by S&S*

205.    S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

206.    Defendant's use in commerce of the S&S Marks is likely to cause consumer confusion by creating the false and misleading impression that S&S (and its goods and services) are associated or connected with Defendant, or have the sponsorship, endorsement or approval of S&S. They do not.

207.    Defendant has used and continues to use marks identical to the S&S Marks in violation of 15 U.S.C. § 1125(a).

208.    Defendant's use of the S&S Marks has caused and, unless enjoined by this Court, will continue to cause, injury to S&S's goodwill and reputation, for which S&S has no adequate remedy at law.

209.    Defendant's use of the S&S Marks has caused S&S to lose sales and/or Defendant to profit.

36

210.   Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the S&S Marks causing S&S irreparable harm.

211.   Defendant has caused and is likely to continue causing substantial injury to the public and to S&S. S&S is therefore entitled to injunctive relief and to recover DGI's profits, and/or S&S's actual damages, as well as S&S's costs and attorney fees under 15 U.S.C. §§ 1116 and 1117.

**THIRTEENTH CLAIM FOR RELIEF**
**False Sponsorship**
*Asserted by Alphabroder*

212.   Alphabroder realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

213.   Defendant's use in commerce of the AB Marks is likely to cause consumer confusion by creating the false and misleading impression that Alphabroder (and its goods and services) are associated or connected with Defendant, or have the sponsorship, endorsement or approval of Alphabroder. They do not.

214.   Defendant's use of the AB Marks has caused and, unless enjoined by this Court, will continue to cause, injury to Alphabroder's goodwill and reputation, for which Alphabroder has no adequate remedy at law.

215.   Defendant's use of the AB Marks has caused Alphabroder to lose sales and/or Defendant to profit.

216.   Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the AB Marks causing Alphabroder irreparable harm.

217.   Defendant has caused and is likely to continue causing substantial injury to the public and to Alphabroder. Alphabroder is therefore entitled to injunctive relief and to recover

37

DGI's profits, and/or Alphabroder's actual damages, as well as Alphabroder's costs and attorney fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that:

218.    Defendant and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, and each of them, be enjoined permanently from:

    a. Accessing or using the S&S Site and S&S's servers

    b. Accessing or using the AB Site and Alphabroder's servers;

    c. Extracting or scraping content from the S&S Site;

    d. Extracting or scraping content from the AB Site;

    e. Using the S&S Marks or any other confusingly similar copy, reproduction, colorable imitation, or simulation of the S&S Marks on or in connection with Defendant's business;

    f. Using the AB Marks or any other confusingly similar copy, reproduction, colorable imitation, or simulation of the AB Marks on or in connection with Defendant's business;

    g. Displaying confidential and proprietary S&S pricing and inventory information on Defendant's Site and in advertisements, social media posts, and promotional videos;

h.  Displaying confidential and proprietary Alphabroder pricing and inventory information on Defendant's Site and in advertisements, social media posts, and promotional videos;

i.  Violating, or causing others to violate, any provisions of the S&S TOU; and

j.  Violating, or causing others to violate, any provisions of the AB TOU.

219.  Defendant be compelled to account to S&S and Alphabroder for any and all profits derived by Defendant from its infringing and violative acts.

220.  S&S and Alphabroder be awarded all damages caused by the acts forming the basis of this Complaint.

221.  S&S and Alphabroder's actual damages, Defendant's profits, and the costs of the action, including attorney fees, under 15 U.S.C. § 1117(a).

222.  S&S and Alphabroder be awarded prejudgment and post-judgment interest on all monetary awards.

223.  S&S and Alphabroder be granted such other and further relief as this Court may deem just and proper.

DATE:  April 23, 2025

By: *Randi W. Singer*
RANDI W. SINGER
Bar No. 2946671
randi.singer@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: 212 839 5300
Facsimile: 212 839 5599

Yvette Ostolaza (pro hac vice forthcoming)
Texas Bar No. 00784703
yvette.ostolaza@sidley.com
Shelby Greaves (pro hac vice forthcoming)
Texas Bar No.  24125254

39

Sgreaves@sidley.com

*Attorney for Plaintiffs,*
*S&S Activewear LLC and Broder Bros., LLC.*
*d/b/a alphabroder*

40